UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WARNER BROS. ENTERTAINMENT INC., a Delaware corporation,

        Plaintiff,

v.

JESSIE HARDEN,

        Defendant.

Civil Action No.: 1:06-cv-00287-ESH

## DECLARATION OF LAUREN NGUYEN IN SUPPORT OF APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT

I, LAUREN NGUYEN, declare:

1. I am Vice President, Worldwide Anti-Piracy Legal Affairs for the Motion Picture Association ("MPA"), where I have been employed since June 2, 2004. The MPA is the international counterpart to the Motion Picture Association of America ("MPAA"). The MPAA is a trade association, which, among other things, investigates the unauthorized reproduction and distribution of copyrighted motion pictures on behalf of its member companies. Plaintiff, among the world's leading motion picture studios, is a member or affiliate or subsidiary of members of the MPAA.

2. I submit this declaration in support of Plaintiff's Application for Entry of Default Judgment. This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3. Plaintiff retained MediaSentry, a provider of anti-piracy services, to identify and gather evidence of infringements of Plaintiff's copyrighted motion pictures on online media distribution systems, or peer-to-peer ("P2P") networks.

4.      Based on the data obtained by MediaSentry, and as set forth in the Complaint, Plaintiff has conclusive evidence that Defendant illegally downloaded, and offered for potentially tens of thousands of others (if not more) to download, one of Plaintiff's motion pictures. (See Declaration of Elizabeth Hardwick.)

5.      This motion picture, *Constantine*, was either still in theatrical release or had not yet been released on DVD/ home video at the time of the infringement.

6.      Motion pictures are expensive to produce, market and distribute. Accordingly, the average motion picture currently costs approximately $100 million dollars to bring to market.

7.      A motion picture has several revenue-generating "windows." A motion picture is generally first theatrically released. During this "theatrical release window," physical or digital copies of a motion picture are not distributed to the general public, and no legal copies are publicly available. This fact is widely and publicly known, and has been reaffirmed by the MPAA through mass media advertising and motion picture trailers.

8.      Typically, three to six months after its box office opening, a motion picture is released in home entertainment formats (*i.e.*, DVD or videocassette). The global DVD/ home video market is an important source of revenue for Plaintiff. The unauthorized distribution of a pirated copy of a motion picture, such as *Constantine*, prior to its release on DVD/ home video causes the Plaintiff particular harm because, in addition to impacting DVD/ home video revenues, it tends to impact or harm the theatrical release revenues for that motion picture.

9.      However, Defendant has not simply downloaded Plaintiff's motion picture, and thereby deprived Plaintiff of the sale of a few motion picture tickets, DVDs or home rentals. Defendant has subjected Plaintiff's copyrighted motion picture to ongoing "viral"

infringement. By offering, without authorization, Plaintiff's copyrighted motion picture for download on P2P networks with tens of thousands of potential users, if not more, Defendant has encouraged and facilitated the repeated, near-instantaneous worldwide infringement of that motion picture by others.

10. The illegal downloads caused by Defendant's infringing activity potentially impact, on a large scale, theatrical and DVD/ home video revenues, as well as motion picture rental revenues. To illustrate, there are approximately 9 million users on the various P2P networks at any given time. Nearly 4 million of these users employ broadband technology to connect to the Internet. A study performed by Informa Telecoms & Media suggests that, at any given time, at least 5% (or 200,000) of these users are actively using these P2P networks to illegally download motion pictures. Assuming an average download time of two hours, this means that 200,000 motion picture files are exchanged every two hours, and that 2.4 million files are exchanged per day. A recent study by LEK Consulting estimates that Internet piracy cost MPAA members in excess of $2.3 billion in 2005.

11. In addition to these lost profits and the legal fees directly attributable to this case, Plaintiff has incurred considerable costs in the protection of its property rights against Defendant, and those like Defendant. First, and as noted above, Plaintiff retained – at considerable expense – MediaSentry to detect unauthorized distribution of digital copies of Plaintiff's copyrighted motion pictures and identify the infringers. Defendant was one such infringer. Second, because Defendant's true identity was initially unknown, Plaintiff filed a "John Doe" lawsuit to ascertain that identity through service of expedited discovery on Defendant's Internet Service Provider. (See Declaration of Karen R. Thorland.) In combination,

Plaintiff expended between $3,000 and $5,000 to develop the evidence and information necessary just to bring the instant action.

12. The recording industry often litigates on the basis of infringements of ten individual songs (*i.e.*, separate copyright works).

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed this  31st  day of  July 2007 , at  Encino, CA         .

/s/
Lauren Nguyen